IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN L. LANE,
        Plaintiff
    v.
GERALD ROZUM, SUPERINTENDENT,
S.C.I. SOMERSET, et al.,
        Defendants

Case No. 3:13-cv-268-KRG-KAP

Order, Report and Recommendation

Recommendation and Order

Pending are two sets of motions by defendants, motions for summary judgment, docket no. 74 (the Pennsylvania Department of Corrections defendants) and docket no. 78 (the medical defendants), that raise the issue of exhaustion of remedies only, and motions to dismiss for failure to state a claim, docket no. 40 (the Pennsylvania Department of Corrections defendants) and docket no. 38 (the medical defendants). The motions to dismiss were held pending completion of discovery limited to the issues of exhaustion. See docket no. 60, Case Management Order of March 2, 2015, n.1.

Having reviewed the briefs filed by counsel and the record in support, I recommend that the motions for summary judgment be granted in part, and that the motions to dismiss be granted in part, as explained below.

There is also a pending motion to file a third amended complaint, docket no. 88 (the motion), docket no. 89 (the proposed amended complaint). That motion is denied, as discussed below. The other motion listed as pending, defendant Mahmud's motion for

protective order, docket no. 67, has been rendered moot by defendant Mahmud's provision of a response to Interrogatory 9 and plaintiff's revision to Interrogatory 10 as well as plaintiff's decision not to seek the deposition of defendant Mahmud on the question of exhaustion, see docket no. 79 at 4. To the extent any further documentation is needed, the motion for protective order is granted except as to Interrogatory 9.

Report

I: Amendment

As I have said before, e.g. Pelzer v. Glunt, Case No. 3:12-cv-69-KRG-KAP (W.D.Pa. Report and Recommendation May 21, 2013, adopted September 9, 2013), aff'd on other grounds No. 13-3914 (3d Cir. December 16, 2013), a civil complaint brings a particular dispute over a particular set of facts to a court for resolution of the question whether defendants, under the facts alleged, violated the plaintiff's legal rights. As such a complaint is inherently and necessarily retrospective, even when injunctive relief is sought, and is not a vehicle by which a plaintiff makes this court a legal ombudsman for all future controversies with the original defendants or persons related to the original defendants. There is no exception for inmate civil complaints.

Plaintiff filed his first counseled complaint in December 2013, followed by a first amended complaint in February 2014, and a second amended complaint, docket no. 23, in April 2014. Motions

to dismiss were filed and responded to by plaintiff after two extensions of time, docket no. 42, docket no. 48, and then the parties conducted discovery on and litigated the question of exhaustion through 2015, with plaintiff requesting more extensions of time, docket no. 61, docket no. 69, docket no. 71, docket no. 82, docket no. 84, docket no. 85. The controversy before the court is based on events at the end of 2011 and in early 2012. To have plaintiff now add claims in a third amended complaint based on allegations about new events in 2014 and 2015, events that relate to the matters in the second amended complaint only in the sense that the plaintiff and some of the defendants are the same, would be wrong for at least three reasons. First, from the defendants' point of view, this matter is as of December 2015 finally in a posture to rule on the merits of a preliminary defense and it would be inequitable to have defendants go to the time and expense of defending themselves against a repeatedly moving target.

Second, from the plaintiff's point of view, if this motion were granted and a fourth version of the complaint considered as the starting point, there would be no principled basis for refusing a fifth version in a fourth amended complaint two years from now. Since it would be foolish for the court to try plaintiff's claims piecemeal, plaintiff would be in effect asking for resolution of his earliest claims only when his last claims, whenever they would be asserted, were ripe for disposition.

Potentially, plaintiff's civil action could last as long as the plaintiff's incarceration.

Third, from the court's point of view, denying further amendment does not put plaintiff out of court, it only requires that he bring his new claims in a separate action. Case management of this sort is expressly expected of the district court. See Fed.R.Civ.P. 42.

II: Claims exhausted by Grievance No. 393460

According to the second amended complaint, Lane was an inmate in J Unit at S.C.I. Somerset on December 7, 2011: that afternoon, it is alleged, snow fell from noon to 2:30 p.m. and through the nonfeasance or misfeasance of a Sergeant Stayer in not ordering snow removal efforts and due to the defective design of the walkway, Lane slipped and fell on an unshoveled walkway, breaking his right ankle and fibula. Fellow inmates helped Lane back to J Unit, a nurse from the prison medical staff took Lane to the medical unit in a wheelchair, corrections officers took Lane to the Somerset Hospital, and William Greer, M.D. (whose name is sometimes spelled Grier and who is not a defendant) performed surgery. Allegedly the length of time from Lane's initial injury about 5:20p.m. until he arrived at the hospital for surgery about 6:45p.m. was unduly long and allegedly was due to the deliberate indifference of corrections or medical personnel.

On or about December 21, 2011, Lane filed a grievance about the condition of the walkway. This allegedly led to retaliation by corrections officers named Brothers, Walters, a Lieutenant Ryba, and three other corrections officers, the retaliation consisting of comments, the filing of a false disciplinary charge, not giving Lane something to protect his cast from water to permit him to shower while in the RHU, and handcuffing Lane uncomfortably for approximately eighty minutes during his initial move to the RHU.

On February 3, 2012, Doctor Greer removed Lane's cast and allegedly ordered that Lane should immediately be given a hard boot and physical therapy but, although Lane filed grievances about the medical department not following Greer's orders, nothing was done until Greer held a video conference with a Nurse Conn and Doctor Mahmud on April 6, 2012. Even then, Lane alleged, physical therapy did not begin until May 2012 and was inadequate.

Allegedly a corrections officer named Keyser retaliated against plaintiff on April 12, 2012.

After discovery, the record shows that the Pennsylvania Department of Corrections acknowledges receipt of five grievances by Lane between December 2011 and December 2012: Grievance No. 393460 (misidentified in places as No. 393260), described as being about "Health Care"; Grievance No. 397126, described as being about "Conditions"; Grievance No. 409748, described as being about

5

"Health Care"; Grievance No. 412662 (misidentified in places as No. 412663), described as being about "Library"; and Grievance No. 431800, described as being about "Marriage". The Pennsylvania Department of Corrections records show that Grievance No. 393460 and Grievance No. 397126 were appealed to final review; the others were not. Lane has filed 30 other grievances, some of which were appealed to final review, some of which were rejected meaning not within the scope of DC-ADM 804, and some of which were disposed of favorably to Lane. The defendants assert that of the five grievances, the only two relevant ones are Grievance No. 393460 and Grievance No. 409748. The plaintiff, though complaining in the brief about my restriction of discovery to the period between December 2011 and December 2012 (since DC-ADM requires that a grievance be filed within 15 days of the events complained about anything filed beyond that time period would not lead to proper exhaustion of the claims made in the second amended complaint) and attempting in the third amended complaint to assert claims based on later grievances that were exhausted, does not dispute that the other three grievances – the exhausted one at Grievance No. 397126 and the unexhausted ones at Grievance No. 412662 and Grievance No. 431800 – are irrelevant. The plaintiff's argument is that Grievance No. 409748 was in fact exhausted and any failure to record that is due to the Pennsylvania Department of Corrections mishandling of the grievance appeal.

The Prison Litigation Reform Act of 1996 amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.§ 1997e(a), to state:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The legal principles relevant to the exhaustion of remedies requirement have been set out several times by the Supreme Court: an inmate must comply with the prison's remedial scheme even if the administrative remedy cannot provide him with the relief he seeks or the inmate believes it is futile, Booth v. Churner, 532 U.S. 731, 741n.6 (2001). Failure to properly exhaust administrative remedies before filing suit constitutes procedural default barring a subsequent civil claim in federal court. Woodford v. Ngo, 548 U.S. 81, 100 (2006)("[S]aying that a party may not sue in federal court *until* the party first *pursues* all available avenues of administrative review necessarily means that, if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court."(emphasis in original))

What constitutes proper exhaustion is governed by the requirements of the applicable prison grievance system, id., 548 U.S. at 95, so long as those requirements are not themselves in violation of the Constitution or federal law. Spruill v. Gillis, 372 F.3d 218, 231-32 (3d Cir.2004).

The Pennsylvania Department of Corrections administrative remedy system is created by DC-ADM 804. What "shall," "should," and "may" be included in a grievance is set out at DC-ADM 804, Section 1.A.11:

The text of the grievance shall be legible, understandable, and presented in a courteous manner. The inmate must include a statement of facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the events that gave rise to the grievance. The inmate shall identify individuals directly involved in the events.

The Spruill v. Gillis panel considered the former text of the same provision that provided that the inmate "should" identify persons involved as mandating identification and observed that although the Pennsylvania Department of Corrections had excused the default, the inmate plaintiff had procedurally defaulted a claim against a defendant by failing to identify him. 372 F.3d at 231-32. The current language requiring the identification of persons involved is unmistakably mandatory.

Grievance No. 393460 was dated December 13, 2011, and initially received by Heidi Sroka, the facility grievance coordinator at Somerset, on December 19, 2011. It describes the snowfall and the events of December 7, 2011 before and during Lane's fall on the walkway, through Lane's return to prison after surgery. The initial grievance was turned down. Lane's appeal to the warden reiterated the same two issues: the snowy walk and the alleged delay in treatment. Lane appealed to final review and

8

received a denial of his request for compensation dated March 26, 2012.

There is no dispute that Grievance No. 393460 was exhausted; the precise question is "What claims against what defendants does this grievance exhaust?" Lane was clearly complaining about the gross negligence of "this institution" - meaning unnamed Pennsylvania Department of Corrections employees - in the maintenance of the walkway, and interpreting the grievance liberally one could find in it the defective design claim asserted in the counseled complaint. Those are purely state law claims from which Pennsylvania has partially waived sovereign immunity in its state courts, see 42 Pa.C.S.§ 8522(b)(4); O'Neill v. Commonwealth, 35 Pa.D.&C.4th 399 (C.P.Huntingdon1996), aff'd 696 A.2d 938 (Pa.Cmwlth.), alloc. denied 705 A.2d 1312 (Pa.1997). The waiver is to the design defect claim only: unlike the waiver in 42 Pa.C.S.§ 8542 for a municipal entity, the Commonwealth does not in Section 8522 waive immunity for claims caused by inadequate removal of snow or ice from a sidewalk because that does not derive from or have its source in the real estate itself. Kahres v. Henry, 801 A.2d 650, 654 (Pa.Cmwlth.2002), alloc. denied, 820 A.2d 706 (Pa.2003).

Lane exhausted no claim that any named member of the corrections staff was negligent, much less deliberately indifferent to the risk from the snowfall or from the alleged defective design

9

of the sidewalk. Unlike in <u>Spruill v. Gillis</u>, there was no excusing of the failure to exhaust a claim against an individual defendant, undoubtedly because the grievance never put the Pennsylvania Department of Corrections on notice that any individual defendant was alleged to have done anything wrong. There is nothing in the grievance, or for that matter in the grievance appeal, that is even remotely similar to the allegations at ¶39, ¶49, and ¶51 in the complaint about Sergeant Stayer refusing inmate requests to shovel the walks. The grievance identifies staff contacted before filing the grievance but does not complain about them. Lane complains about the alleged negligence of "the institution" as failing in snow removal and about what he believed to be the delay in receiving medical attention, but he described the individuals mentioned by name, corrections officer Durst and Sergeant Stayer, only to contrast their prompt response to his medical needs once they understood that he appeared to have something more than an ankle sprain with what Lane believed to be the slow response of the medical department. In fact Lane writes about the rapport he had with the officers as a reason why they might have originally thought Lane was joking about his injury and one of his supports for his complaint that the medical department was slow to respond was that the corrections officers had called them twice.

There is no grievance about corrections officer Brothers allegedly retaliating against Lane on December 28, 2011, see Second Amended Complaint ¶¶ 54-57. There is no grievance about Lieutenant Ryba and three corrections officers attempting to intimidate Lane as alleged at ¶¶ 62-65, or about conditions in the RHU as alleged in ¶65 and ¶66. There is no grievance about corrections officer Keyser allegedly retaliating against plaintiff on April 12, 2012. There is no grievance about conditions in the RHU. (Further, leaving aside the question of exhaustion, plaintiff does not by alleging that conditions in the RHU were uncomfortable - but hardly cruel and unusual punishment - allege a violation of Title II of the ADA, which bars discrimination on the basis of disability in the provision of "services, programs, or activities of a public entity." 42 U.S.C.§ 12132.)

III: Claims exhausted by Grievance No. 409748

Grievance No. 409748 was dated April 19, 2012, and marked initially received by Heidi Sroka on April 25, 2012. Sroka's role as grievance coordinator is to handle the first level of the grievance process by referring the grievance to the appropriate person for investigation. Since the grievance related to health care she wrote "Health Care" on the bottom of the first page and referred it to Denise Thomas, the administrator of the medical department. It took until May 2012 for Sroka to receive an answer back from Thomas; the next date on the grievance is May 16, 2012.

The grievance begins with the claim that "This is my 3rd griev." It complains that therapy and the hard boot allegedly ordered by Dr. Greer when he removed Lane's cast in February had not been provided, and despite Lane's complaint about that to Greer during a teleconference on April 6, nothing had been done as of April 19. The grievance specifically complains about Dr. Mahmud, Ms. Swanhart, and a nurse named Niniessar (also spelled Niesser in places) not responding to his requests, except for one response by Niniessar in late February. The grievance also states that although Lane believed he had been retaliated against by corrections officer Keyser and would be retaliated against in the future by Keyser and unnamed persons he was **not** grieving a retaliation claim.

Thomas apparently investigated the grievance; she responded in a response dated May 16, 2012, noting that physical therapy was ordered on April 13, 2012, an evaluation conducted on April 24, 2012, and three sessions provided to date. The grievance was denied by Sroka on May 16, 2012.

The grievance record system shows no appeal of the grievance either to the second level- to the warden- or to the third level - to the Pennsylvania Department of Corrections central office.

Outside the grievance system, Lane wrote to Nurse Swanhart on an "inmate's request to staff member" form dated

12

February 17, 2012, complaining that he had not received physical therapy or a hard boot. Lane wrote to Dr. Mahmud on an "inmate's request to staff member" form dated February 19, 2012, complaining that he had not received physical therapy, a hard boot, or a reply from Swanhart. Lane wrote to his unit manager, Mr. Mulligan, on an "inmate's request to staff member" form dated February 17, 2012, complaining that he had not received physical therapy, a hard boot, or a reply from Swanhart or Mahmud.

Besides the filing of the grievance in April and its denial in May, Lane wrote communications on grievance forms to Sroka. In one dated March 26, 2012, Lane asked why he hadn't heard about the disposition of a grievance Lane said he had filed on March 5, 2012. The grievance form signed by Lane with a date of March 5, 2012 complains about the same delay in receiving a hard boot and physical therapy as Grievance No. 409748.

Lane also wrote to his block counselor, Ms. Snyder, on an "inmate's request to staff member" form dated April 16, 2012, complaining of the same delay in receiving therapy as in Grievance No. 409748.

Lane also wrote to deputy warden Sylvia Gibson on an "inmate's request to staff member" form dated April 20, 2012, complaining of the same delay in therapy as in Grievance No. 409748.

13

Lane wrote to warden Rozum on an "inmate's request to staff member" form dated June 12, 2012, complaining that he had not heard a response to his appeal from the denial of Grievance No. 409748.

Lane wrote to warden Rozum on an "inmate's request to staff member" form dated June 27, 2012, complaining that he had not heard a response to his appeal from the denial of Grievance No. 409748 or to his communication of June 12, 2012. The response at the bottom of that request, signed with a name beginning with an "H" and dated June 28, 2016, was:

> Mr Lane:
> I reviewed the record and concur with respondent[']s reply. You did receive required therapy. Further, you may not appeal 409748 until the facility manager's decision is finalized. See DC-ADM 804.17

Lane avers that he never received that response. docket no. 70, Exhibit XI, Lane Declaration of June 26, 2014 ¶12. If I understand the record correctly, warden Rozum could not identify the author of that response. See docket no. 70, Exhibit XII, Rozum Interrogatory No. 15 and response thereto.

In a letter dated July 8, 2012, Lane wrote to the chief grievance officer for the Pennsylvania Department of Corrections complaining that the warden had still not responded to the grievance appeal of Grievance No. 409748.

Despite the lack of a record that Lane appealed from Rozum's response, there is at least a dispute of fact about Lane's

14

exhaustion of Grievance No. 409748. Someone responded to a grievance appeal by Lane on June 28, 2012 and gave the ambiguous directions that Lane's appeal was denied and that further review would have to await the finalized decision of the facility manager, in other words the warden.

Although after the deposition of Heidi Sroka there could be no reasonable claim that there was any mishandling of grievances at the initial level, the documentary record shows that the appellate process did not work flawlessly. This appears to be due to the nature of the grievances handled: where as with medical grievances the review process required input from the health care administrator and perhaps medical staff members themselves, it is unsurprising that some communications from the inmate patient, communications that began only a week after Lane's cast was removed, would be written while his earlier complaints were being investigated.

At this stage there is a dispute of fact over whether Grievance No. 409748 was exhausted, and I recommend that summary judgment be denied as to that issue.

As with Grievance No. 393460, the question that must be addressed is "What claims against what defendants does this grievance exhaust?"

First, the grievance only names Dr. Mahmud, Nurse Swanhart, and Nurse Niniessar, and the first two are mentioned only

15

as background players: the person described as having decisionmaking authority is Dr. Mahmud. The Second Amended Complaint makes claims against both the Pennsylvania Department of Corrections defendants and the medical defendants: in addition to the factual allegations at ¶¶ 45-47 and 67-90, deliberate indifference claims are asserted in Count V, ¶¶ 154-87 and pendent state claims of negligence in Count IX, ¶¶ 218-35. If the grievance was in fact properly exhausted, the only claims that could fairly be said to have been exhausted are ones against Dr. Mahmud. There is no need for congruity between a grievance and the subsequent complaint, but some correspondence is implicit in the very requirement of exhaustion. It is not to be expected that an inmate grievance differentiate between negligence and deliberate indifference, but simple identification of a person as being someone whom the inmate blames for a problem is a minimal requirement, one set out in DC-ADM 804.

Second, the claim against Dr. Mahmud is that she was deliberately indifferent for failing to provide physical therapy or a hard boot from April 6, 2012 onward, when she allegedly had actual knowledge that those were therapeutic requirements, and a pendent claim of negligence for failing to provide physical therapy or a hard boot from February 3, 2012 onward, when she allegedly should have known of those requirements. The attempt to smuggle

16

in anything else, as in ¶179 ("failure to prescribe pain medication as prescribed and needed") fails for lack of exhaustion.

Any claim of deliberate indifference or negligence based on a delay in treatment on December 7, 2011 should be dismissed for failure to state a claim. Lane asserts that various inmates were going back to tell corrections officers to call medical personnel from 5:20p.m. onward, but there is no allegation that any medical personnel or any corrections personnel had notice of Lane's injury until he was carried back to his unit. Lane then alleges that as soon as Durst and Stayer understood that he was hurt they called medical. Despite Lane's conclusory labeling of the next hour and a half as unconstitutional delay, his allegations of fact are that he was in surgery approximately an hour and a half after the accident. As a matter of law, an hour and a half to move an injured inmate from his unit to the medical service, to confirm his injury and to arrange for secure transport to an outside hospital, and to be in surgery would not be an unconstitutional delay even if only one defendant were in charge of all the steps to move Lane from the unit to the emergency room. And although Lane lumps all the defendants together as responsible for any alleged deficiency in care during the entire time period, see ¶¶ 175, 178-79, it is obvious from the allegations that plaintiff does make that the officers on the unit had a different role from the medical

17

department, and both had a different role from whoever arranged the corrections officers to transport Lane to the hospital.

The allegations against the corrections personnel fail to state a claim for an additional reason, also given in Spruill v. Gillis, supra, 372 F.3d at 236, namely that absent a reason to believe or actual knowledge that the medical service is mistreating a prisoner, prison officials do not have the mental state required for deliberate indifference. Although plaintiff alleges at ¶¶ 170-72 a duplicate duty by the corrections defendants to provide medical care, Rule 8 does not permit a plaintiff to allege a non-existent legal duty as if it were a fact. Plaintiff makes the allegations of facts that the corrections defendants "had notice" that Lane had serious medical needs and that "attention" to "them" (without any differentiation) had been "denied" by the medical staff. See, e.g. ¶171. To equate that to deliberate indifference by the corrections defendants would write Spruill v. Gillis, and for that matter Farmer v. Brennan, 511 U.S. 825 (1994) right out of the law. According to the Supreme Court:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the **official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.**

Farmer v. Brennan, 511 U.S. 825, 837 (1994)(my emphasis). There are no allegations of fact that allow the inference that any

corrections defendants actually believed that Lane - taken for emergency surgery approximately an hour after his injury - was subsequently being badly treated in any way.

In sum, what should remain of the Second Amended Complaint is Count I, insofar as it states a pendent defective condition of real estate claim against the Commonwealth only, Count V, insofar as it states a deliberate indifference claim against Dr. Mahmud, only, for failing to provide physical therapy or a hard boot from April 6, 2012 onward, and a pendent claim of negligence for failing to provide physical therapy or a hard boot from February 3, 2012 onward. All other defendants and claims should be dismissed. If the Court accepts my recommendation and retains jurisdiction over the pendent claims, discovery on the merits shall proceed as follows:

1. Fact discovery shall be completed by June 30, 2016.

2. Plaintiff shall make expert disclosures required by Fed.R.Civ.P. 26(a)(2) by July 14, 2016; defendants shall do the same by July 28, 2016. Expert discovery shall be completed by August 30, 2016.

3. Any motions for summary judgment shall be filed on or before September 30, 2016, with responses due twenty days thereafter. Filing of pretrial statements shall be scheduled after any motions for summary judgment have been decided.

19

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 11 March 2016

/s/ Keith A. Pesto
Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF