IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN L. LANE,
        Plaintiff
     v.                    : Case No. 3:13-cv-268-KRG-KAP
GERALD ROZUM, SUPERINTENDENT,
S.C.I. SOMERSET, et al.,
        Defendants

Order, Report and Recommendation

Recommendation and Order

       Pending are motions for summary judgment by the Pennsylvania Department of Corrections (ECF no. 125) and by Dr. Mahmud (ECF no. 121). Having reviewed the briefs filed by counsel and the record in support, I recommend that the motions for summary judgment be granted in whole or in part as discussed below.

       The motion by Dr. Mahmud to strike plaintiff's expert witness report (ECF no. 135), is denied.

Report

       Plaintiff John Lane was an inmate in J Unit at S.C.I. Somerset on December 7, 2011. Snow fell that afternoon from noon until what plaintiff alleged was about 2:30 p.m. and what defendants allege was until well into the evening. At about 5:20 p.m. that evening, Lane slipped and fell on his way to the cafeteria because of what he described as compressed snow and ice on an unshoveled walkway. Lane broke his right ankle and fibula. Lane filed a civil complaint which, as amended, alleges two causes

of his slip and fall: the nonfeasance or misfeasance of defendant Sergeant Stayer in not ordering snow removal efforts, and the negligence of the Commonwealth in the custody and care of its real estate, which plaintiff submits is the defective design of the walkway as too steep and lacking handrails. The claims against Sergeant Stayer have already been adjudicated.

Fellow inmates helped Lane back to J Unit and a nurse from the prison medical staff took Lane to the medical unit in a wheelchair. By about 6:45 p.m., corrections officers had taken Lane to the Somerset Hospital for surgery, where William Greer, M.D., performed open reduction/internal fixation surgery. Lane was returned to Somerset.

On February 3, 2012, plaintiff was taken back to Dr. Greer, who removed Lane's cast and, according to Lane, told Lane and two corrections officers to tell defendant Rashida Mahmud, M.D., the medical director at Somerset, that Lane should immediately be given a hard boot and physical therapy. Within several days, Lane began filing grievances about the medical department not following Dr. Greer's orders. Lane alleges that nothing was done to rehabilitate his ankle injury until after Dr. Greer held a video conference with a Nurse Conn and Dr. Mahmud on April 6, 2012. Dr. Mahmud asserts that Dr. Greer gave instructions

2

for physical therapy on April 13, 2012. Physical therapy began with an evaluation on April 24, 2012. Plaintiff Lane's civil complaint alleges two claims against Dr. Mahmud based on failure to provide medical care: a deliberate indifference claim for failing to provide a hard boot and physical therapy from April 6, 2012 until April 24, 2012, and a pendent negligence claim for failing to provide a hard boot and physical therapy from February 3, 2012.

The Supreme Court has stated that for an inmate to state a claim against prison officials under the Eighth Amendment for an injury caused by medical treatment or the lack thereof, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). It is not in dispute at this stage of the proceedings that plaintiff's need for physical therapy was a serious medical need.

As for deliberate indifference, after decades of lower court precedent, the Supreme Court formally defined deliberate indifference as the state of mind that a prison official has when he or she:

knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

3

Farmer v. Brennan, 511 U.S. 825, 837 (1994). Negligence, by contrast, imposes liability for actions that fail to meet the generally accepted standards of professional conduct. See Grossman v Barke, 868 A.2d 561 (Pa.Super.), allocatur denied, 889 A.2d 89 (Pa.2005).

I address first the claims against the Pennsylvania Department of Corrections for the slip and fall itself. A negligence claim can be made only against the Pennsylvania Department of Corrections, because the Commonwealth is the owner of the sidewalk where Lane fell. However, the Commonwealth does not under 42 Pa.C.S.§ 8522(b)(5) waive its sovereign immunity for negligence claims based on alleged inadequate removal of snow or ice from a sidewalk. Even if it did, under Pennsylvania's well-settled "hills and ridges" rule the Commonwealth, just like any other landowner, would not be liable for slippery conditions resulting from ice and snow unless it permitted ice and snow to unreasonably accumulate in "ridges or elevations" that remain for an "unreasonable" amount of time. Landowners are not responsible for slippery conditions for failing to respond instantly to normal inclement weather. See Beck v. Holly Tree Homeowners Ass'n, 689 F. Supp. 2d 756, 762 (E.D.Pa.2010)(collecting cases illustrating the doctrine). Proof of negligence requires evidence that a

4

dangerous condition existed and been ignored for an unreasonable time. Landowners are under no legal duty to clear their walks within any time short of the time it takes the snow to accumulate into hills and ridges. There are two practical reasons for this: pedestrians are presumed to be capable of paying attention to where they are walking when outdoors in the winter, and the costs of shifting the duty to assure the safety of pedestrians to the owners of sidewalks would as a practical matter discourage if not eliminate most sidewalk construction, to the detriment of all.

Plaintiff advances a second theory of liability not barred by sovereign immunity or the hills and ridges doctrine, namely that the walkway where plaintiff Lane slipped and fell was defectively designed. The Commonwealth waives immunity from a claim that the sidewalk was negligently designed or built because such a claim derives from or has its source in the real estate itself. See Kahres v. Henry, 801 A.2d 650, 654 (Pa.Cmwlth. 2002), alloc. denied, 820 A.2d 706 (Pa.2003); Jones v. SEPTA, 565 Pa. 211, 772 A.2d 435, 444 (2001). A useful discussion of the parallel doctrine applicable to political subdivisions is set out in the Superior Court's opinion in Alexander v. City of Meadville, 61 A.3d 218, 226-27 (Pa.Super.2012):

Imposition of liability upon a governmental entity under the
sidewalks exception is only permitted where it is alleged that the
injury "occurred as a result of a condition of the governmental
realty itself deriving, originating, or having the realty as its
source." Cohen v. City of Philadelphia, 847 A.2d 778, 782
(Pa.Commw[Cmwlth.]Ct.2004). Accordingly, there must be "[an]
allegation and proof that the substance on the sidewalk or other
real estate was caused to be on the real estate because of an
improper design, construction, deterioration, or inherent defect
in the real estate itself." Finn v. City of Philadelphia [165
Pa.Cmwlth. 255], 645 A.2d 320, 323 Pa.Commw[Cmwlth].Ct.1994)
(emphasis added). As such, **the issue is whether there is a
dangerous condition of the sidewalk** as opposed to a dangerous
condition on the sidewalk.
In Baker v. City of Philadelphia [145 Pa.Cmwlth. 421], 603 A.2d 686
(Pa.Commw[Cmwlth].1992) the plaintiff slipped and fell on ice and
snow that accumulated on a sidewalk and street. The plaintiff's
claim against the City of Philadelphia was that there was "a defect
of the street and that the artificial condition, specifically the
narrow opening of the defective sewer and the improper maintenance,
did not merely facilitate the injury but rather caused the injury"
and that this condition was foreseeable. Baker, supra, at 425 [603
A.2d 686]. As noted previously, Pennsylvania Rule of Civil
Procedure 1035.2(2) requires a plaintiff defending against a motion
for summary judgment "to produce evidence of facts essential to the
cause of action or defense which in a jury trial would require the
issues to be submitted to a jury." Pa. R.C.P. 1035.2(2). A
plaintiff faced with a motion for summary judgment must produce
evidence in support of the liability claims set forth in the
Complaint, rather than merely demurring to the evidence developed
during discovery and resting on allegations of liability alone,
without proof. In the instant case, there is no evidence of
foreseeability. Neither is there any evidence that the City had
notice of a defect in the sidewalk or that the design of the
sidewalk was defective. (Ms. Sampson's Deposition at pp. 20-
21); (Ms. Berger-Smith's [Deposition] at pp. 37-38).
Trial Court Opinion, 3/22/12, at 7-9. Upon review of the record,
we agree with the trial court's analysis.

<u>Alexander v. City of Meadville</u>, 61 A.3d 218, 226-27 (2012)(my

emphasis.)

6

To show an issue of fact regarding the dangerous condition "of" the walkway, plaintiff duly offers the expert report of Sean Isgan, P.E., an engineer whose expert qualifications are not challenged. Isgan reports, also without challenge, that the walkway where Lane fell had a grade of approximately 9%. According to Isgan, again without challenge, ADA guidelines prescribe that walkways with sufficient rise and a grade greater than 5% are considered ramps and should have handrails, and FHA guidelines prescribe that walkways with a grade greater than 8% are considered ramps and should have handrails. Isgan opines that the Pennsylvania Department of Corrections' walkway was defectively designed because it does not meet either of those guidelines and that in combination the snowy conditions, the "relatively smooth concrete surface," the 9% slope, and the lack of handrails were the proximate cause of Lane's fall. I pass over for now the portmanteuing of multiple conditions into one proximate cause.

It is obvious that the negligence claim based on a defective design stands or falls on the materiality of Isgan's opinion. In other words, since there must be a genuine issue of fact that the sidewalk's design was a substantial factor in causing Lane's slip and fall, the dispositive question is whether Isgan's

opinion that the walkway was "defective" supplies any relevant evidence about causation.

Even an expert cannot mix and match theories of liability and causation. Isgan's report certainly creates an issue of fact about whether the walkway would pass ADA or FHA guidelines, assuming one or the other guideline to apply. But whether Isgan opined that the walkway is defective because it is too steep or too narrow to meet ADA or FHA guidelines, or opined that the walkway is defective because the concrete violated ASTM standards because it contained too much dolomitic limestone, plaintiff has to relate the alleged defect to Lane's injury. When evaluating plaintiff's evidence at the summary judgment stage of the proceedings, I give Isgan full credit for every opinion he gives, but it is what he carefully does not say that is dispositive here.

Snow does not care whether a walkway has a grade of 5%, 8%, or 9%. Stated in more legal language but to equivalent effect, there is no competent evidence in Isgan's opinion or anywhere else in the record that the slope of the sidewalk (whether the 9% slope, or the 1% or 4% of excessive slope) had anything to do with Lane's accident. Plaintiff Lane himself originally blamed his slip and fall entirely on accumulated snow. The defendant treats the change in theory as having some independent significance, Defendant's

Brief at 9-10, but credibility is not at issue at this stage, and there is nothing legally impermissible in plaintiff, years later and after the limited scope of the Commonwealth's waiver of immunity to a defective condition of the walkway becomes a dispositive issue, asserting that it was the slope of the sidewalk that caused his slip and fall. Nevertheless, the theory of liability must equally be supported by sufficient evidence to allow a jury properly instructed on the substantive law to return a verdict for the plaintiff. That is missing.

Isgan emphatically does **not** opine that the walkway's defect - its 1% or 4% deviation in the slope from ADA or FHA guidelines - affected the accumulation of snow, which is the only way that it could be relevant to a theory of causation based on the walkway's design. That is fatal to plaintiff's claim.

Let me elaborate on this because this is an issue in many slip and fall cases here in Western Pennsylvania. Depending on the type of snowfall, from powder to graupel, the angle of repose -the angle at which accumulated snow will slide of its own weight- varies in a range around 40°. (To any reviewing court, I know that no learned treatise about coefficients of friction is in evidence, and I know that in this or any other case the precise measure of the angle of repose would be a matter for expert testimony, but any

layperson who has ever shoveled snow, let alone skied, has practical experience with the concept of angle of repose, and with the fact that for snow the angle of repose is an order of magnitude greater than 1% or 4%. To draw an analogy that might be more understandable to a reviewing court not from Western Pennsylvania, a mechanical engineer may be needed to give an expert opinion based on observed damage to a bumper about whether the collision speed in a vehicle accident was 40m.p.h. or 50m.p.h. but even a layperson can draw a conclusion that zero damage to the vehicles is inconsistent with a claim that the collision speed was 100m.p.h., or that total demolition of a vehicle could not take place at a speed of 5m.p.h.)

Here, it is important to repeat, Isgan does **not** opine that the walkway's slope affected the accumulation of snow. If an expert had opined that snow accumulates excessively greater on a 9% grade than on a 5% grade, that would raise eyebrows as much as a opinion that an unscathed bumper implies a collision speed of 50m.p.h., but at the summary judgment stage I would have to accept it, raised eyebrows or not. But Isgan refrains from making any claim relating the slope of the sidewalk and the accumulation of snow. There is therefore no evidence that the design of the defendant's walkway is relevant to the cause of plaintiff Lane's

10

slip and fall. Just as it would be the case with any other landowner's walkways, evidence that a sidewalk has a certain slope says absolutely nothing about causation.

As already noted, I accept Isgan's statement that he walkway is "defective" because the FHA says an 8% grade is the maximum for walkways within its jurisdiction while the ADA prescribes a grade of 5% or less for walkways within its jurisdiction. For plaintiff to go beyond what Isgan states to what Isgan does not state, that Lane's slip and fall was caused by the 1% or 4% deviation of the walkway's slope from one or the other guideline, is to hunt for theory of negligence that is not excluded by sovereign immunity and then to imagine a theory of causation.

To illustrate, suppose that the walkway contained too much limestone to comply with ASTM expansion standards or was too narrow to comply with ADA standards. Those are undoubtedly defects. Those defects would have to be shown, not just apodictically pronounced, to have caused Lane's slip and fall. Experts are not oracles.

But, it might be rejoined, there is an obvious causal connection between steep slopes and slips and falls that is absent from my hypotheticals about the composition or width of the walkway, and since defendants do not offer expert testimony about

the angle of repose, a jury must sort out whether the defect -a 1% or 4% excessive slope- caused Lane to slip and fall. Let us examine that. Overlook for the moment that since the slope of land is an obvious condition - it would be absurd to describe even a 9% slope as an obvious hazard - to invitees (an inmate in prison is an invitee), licensees, and trespassers alike, no negligence claim can be based on it absent evidence that the slope caused an excessive buildup of snow. See Carrender v. Fitterer, 469 A.2d 120, 125 (Pa.1983)(excluding liability to invitees from known or obvious dangers which are not extreme, and which the landowner can expect any reasonable person exercising ordinary attention, perception, and intelligence to avoid.)

Whether the walkway meets ADA or FHA standards or is defective because it does not is a red herring because Lane was not disabled and does not claim to have been disabled when he slipped and fell. Even if he had so claimed, the ADA is legislation designed to reduce the barriers to the disabled in employment and in access to public facilities and accommodations, not safety legislation, and certainly not safety legislation based on snow hazards. See 42 U.S.C.§ 12101. To consider ADA-derived guidelines for walkways as relevant to a claim about safety (much less to

assert that they create an issue of fact about causation) would be to use them for something that was never contemplated.

In addition to the plaintiff's invalid assumption that ADA guidelines set a safety standard and do so for individuals who are not disabled, it is worth noting that such improper use of ADA guidelines could not be confined to facilities subject to the ADA or to snowy conditions. In prison or out, a pedestrian cannot claim a triable issue of fact exists simply by showing a walkway has a 9% slope and no handrails, even if that makes it defective under the ADA. A theory of negligence based on the slight deviation of a walkway from ADA accessibility guidelines without any evidence of causation is untenable. It is not supported by Isgan's opinion. Summary judgment must be entered for the Pennsylvania Department of Corrections.

As for the claims against defendant Dr. Mahmud, there is no evidence of deliberate indifference. First and foremost, plaintiff's expert, Sonja Harris-Haywood, M.D., never even opines that Dr. Mahmud was deliberately indifferent. Dr. Harris-Haywood's expert medical report goes entirely to the question of the standard of care and whether it was met in plaintiff Lane's case. Any claim that Dr. Mahmud can be held liable for deliberate indifference for not following undocumented oral orders for a hard boot and

immediate physical therapy that were allegedly given by Dr. Greer in February to two corrections officers and plaintiff Lane can be dismissed out of hand. Since plaintiff Lane does not point to any evidence that Dr. Mahmud herself believed either a hard boot or PT to be necessary, any claim of deliberate indifference in not ordering a hard boot or PT rests only on plaintiff's assertion that Dr. Greer so ordered it and Dr. Mahmud disregarded it. But assuming that to be the case, for a doctor to disregard what an inmate and two corrections officers said was another doctor's instruction (at least until written instructions from that doctor are received) is not deliberate indifference. Furthermore, Dr. Harris-Haywood opines that the standard of care for this type of injury after 4-8 weeks of a hard cast is "transition to brace **or** soft cast." Even assuming brace and hard boot are the same, that is clearly presented as an alternative to a soft cast. There simply is no evidence of deliberate indifference in not ordering a hard boot.

For the period from April 6, 2012 until physical therapy began, plaintiff's claim of deliberate indifference about the delay in providing physical therapy would have to rest on the proposition that Dr. Greer told Dr. Mahmud that plaintiff Lane needed physical therapy and she did nothing until April 24, 2012. But again, Dr. Mahmud cannot be charged with deliberate indifference unless she

14

subjectively knew about a serious medical need of Lane's and disregarded it. At most the record shows that she subjectively knew that Dr. Greer believed that PT was called for, but the evidence is indisputable that Dr. Mahmud did **not** disregard Dr. Greer's orders. The relevant record is defendant Mahmud's Exhibit 5, an excerpt from plaintiff Lane's progress notes, the authenticity of which is not challenged. Taken in the light most favorable to the plaintiff, the entry for April 13, 2012 reflects a telemed conference on April 5, 2012 with Dr. Greer, followed by a written consult "today" April 13, 2012, in which Dr. Mahmud noted "Start PT." In other words, at most Dr. Mahmud waited to act until she received a written order on April 13, 2012. The evaluation for PT by R.D. Mason took place on April 24, 2012, and PT began on May 1, 2012.

A jury could find a one-week wait by Dr. Mahmud for Dr. Greer's written report, but that is all. A jury would not be allowed to speculate that Dr. Mahmud disregarded evidence that there was a more urgent need because there is no such evidence. Additionally, as Dr. Harris-Haywood notes in her expert report, doctors are sometimes unavailable, and there is no evidence that if on April 5, 2012 Dr. Mahmud had given an order for PT to begin, that PT would have begun any sooner. Patients have to make

15

appointments, and some period of delay is normal. Even though inmates do not schedule their own appointments, someone else does, and some period of delay is equally to be expected and cannot itself support a jury verdict of deliberate indifference. Finally, to repeat, Dr. Harris-Haywood never opines that Dr. Mahmud was deliberately indifferent in this respect.

As to the negligence claim against Dr. Mahmud, Dr. Harris-Haywood opines that the delay in beginning plaintiff Lane's physical therapy violated the applicable standard of care. Counsel for Dr. Mahmud puts all the eggs in one basket in the motion to strike, attacking the comprehensiveness of Dr. Harris-Haywood's curriculum vitae and plaintiff's counsel's alleged delay in providing the expert report. The defense on the merits is that without an expert report plaintiff Lane has no claim, but Dr. Mahmud does not otherwise challenge plaintiff's evidence of negligence. If Dr. Harris-Haywood's opinions are in evidence then plaintiff has a viable pendent negligence claim.

I do not believe that the record justifies the drastic step of barring the plaintiff's expert's report. Counsel for Dr. Mahmud suggests in the motion to strike plaintiff's expert report that the opportunity to depose Dr. Harris-Haywood was "undermined." There is an obvious remedy short of striking the report. Discovery

should be and hereby is re-opened for the limited purpose of conducting an IME of the plaintiff (if desired) and for the depositions of Dr. Harris-Haywood and any experts the defendant chooses to retain. If the times cannot be mutually agreed upon, counsel should contact me for further order. At this point the motion for summary judgment by Dr. Mahmud should be denied as to the negligence claim.

I note that it does not appear that Dr. Harris-Haywood has ever examined plaintiff. Her expert opinion that "it would stand to reason that Mr. Lane's healing would have been compromised and that he would have residual and permanent pain outside the normal range" is an opinion that plaintiff's injury is plausibly related to the defendant's conduct. That without more does not prove causation or damages. Counsel should save trial time by focusing on this issue in depositions.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to file written objections to this Report and Recommendation.

DATE: 12 September 2017

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF